Our next argued appeal is docket number 24-1386, Young v. Collins. Mr. Dohakis, whenever you're ready. Thank you, Your Honor. May it please the court, on behalf of Mr. Young, I want to thank this court for the opportunity to present this appeal. This appeal asks the court to determine whether the VA may lawfully apply 5109A or 3.105A to a decision before establishing the finality of the decision under attack. In all cases, the board must make a finding of fact or law that the challenge decision is final before it can proceed to cue. This is not in dispute. Mr. Young asked this court to find that a final decision is jurisdictional to acute determination and VA must establish that it is final before it can properly apply a cue. Mr. Young does not ask this court to find that the board must always exhaust every single possible non-finality before moving towards cue, but rather when it's raised at any time in the proceeding, including at the Veterans Court, that that issue is available for review and the Veterans Court must consider that. I have a problem up front. The CAVC opinion is clear, I think, that the court refused to decide this finality issue. They applied exhaustion. They did, Your Honor. They said, we're not going to decide that. And then there was some musing, if you will, dicta, talking about they didn't think much of the argument. But they said, we're not deciding that issue. Your appeal presumes, I think, that the CAVC actually decided the issue incorrectly. And you're appealing as a question of law under our jurisdiction that incorrect legal interpretation. But there hasn't been a decision. The only decision on that issue was that you failed to exhaust. Therefore, the CAVC would not write an opinion dealing with that topic. So the final— So the only legal decisions coming out of that opinion are the first one, which nobody doubts, that the case goes back for that reason. And the second one is that you held exhaustion prevented the CAVC from even deciding your argument. So there's at least two— I realize the government didn't make this argument in its brief. It also assumed that the CAVC's dicta is a holding. And I have a problem. I can't find a legal issue on this point you're talking about for us to deal with. And as I read your reply brief, if that issue is not here, the appeal's over. You don't have any other challenge because your exhaustion challenge is mixed up in— entirely mixed up in your view that the CAVC decided the finality issue, decided incorrectly. So the conclusion— Where's the final decision? Where's the actual holding in the opinion below? On page 8 of the appendix, Your Honor, the very last sentence, the portion of the decision— Page 8? Yes, Your Honor. The portion of the decision, the board's decision denying on non-cue the effective date is affirmed. And so the determination affirmed the— That's affirmed because your argument challenging that was not reached. That's correct, Your Honor. But this court does have jurisdiction to address issues that were passed over by the Veterans Court. And it also— Excuse me? What was passed over? Where's the holding? Your argument is that the CAVC made a holding directly on your point that the BVA does not have a legal obligation in every cue case to establish finality. Well, it— It expressly refused to greet that argument. It did, Your Honor, but it did so erroneously because as a jurist— So where did it hold? Where is the holding that you're appealing? The holding that— On the finality issue. The holding on the finality issue, Your Honor, is, again, I think that they affirmed the earlier—or the board's finding— They affirmed the BVA effective date because the BVA effective date didn't consider your finality argument. And they didn't have to because you didn't raise it. Well, the board— So there was no other challenge to the BVA finality. Your only challenge to the BVA finality ruling was that they failed to establish their authority. Well, the board did make the specific finding— The way the opinion is structured, it takes your argument and says, wait a second. When we get to this effective date finality issue, we're going to decide whether or not you've exhausted. Well, but our position, Your Honor— Right. And so I just don't see it, Mr. Delacroix. So our position, Your Honor, is that they have no discretion to refuse to consider it because it is jurisdictional. It's jurisdictional to the board to have— That presumes you're right on the merits issue. You're wrong on the merits issue. Well, if we're wrong on the merits issue, if this court does— There's been no decision on the merits issue. If there's—I'm sorry. I think we're speaking of the wrong—speaking across each other, Your Honor. If this court finds that this—that the final decision is not jurisdictional to addressing CUE at the board, then we—yes, we agree that the court should either dismiss or affirm the Veterans Court's decision. I just don't get—you're raising a legal argument here. The CAVC made a terrible mistake. It listened to my argument, and it decided against me, and it said, no, the BVA does not have to establish finality. So— And you're challenging that. I see. And there's nothing I see in that opinion that is the holding that you're challenging. So what the Veterans Court did— There's a perfect explanation for why it affirmed the effective date from the board order because absent your legal argument, there's nothing wrong with the board order. So there is, Your Honor, and I think—and I understand now more clearly what your question is going towards. The Veterans Court took jurisdiction over a CUE where there was none. And so when the board exceeds its jurisdiction and the court also does that— No, no, no. You're not talking about the first round. We all agree on the remand. Well, if there was no jurisdiction in the first place, Your Honor, there's no legal basis for doing what the Veterans Court did. They don't have an obligation that you want to impose on it to, in a CUE case, to review for finality in every case. They don't have that obligation. And that's— That is not jurisdictional. Well, that's—well, they do, Your Honor, and they often do—the final decision is a predicate to CUE. I'm using up too much of your time. I understand, Your Honor, but this— I finally got my point. I understand your point, Your Honor, and that's really—and that's our point, is that the final decision is a predicate to any application of this statute or the regulation. In the cases we cited, starting with George, this court— Let me ask you this. Yes, Your Honor. Are you arguing that every time a CUE challenge to a final decision is filed, that there is an inherent also challenge that that decision is not final and adjudicated? Not at all, Your Honor. And then what's the point of your argument? So the point of your— The point of my—it seems to be that if the board—what's the result if the board looks at this, or the RO, whoever the CUE is properly raised to, looks at it and says, oh, this is not a final decision, so it's not a CUE challenge? Then what? They just dismiss it, right? Then—exactly, Your Honor, and that's our point. And the secretary in their brief, footnote 9—sorry, footnote 4, laying from this court, all said the same thing. If there is no final decision, there cannot be CUE, and the proper result is that you dismiss it and then proceed to adjudicate whatever is left pending. And so if the veteran— No, no. What do you mean, without refiling anything? Because then you're saying exactly what I said, which is every CUE claim has an inherent claim of non-finality in it. If that's what you're saying, that's just crazy. There's no basis whatsoever in the CUE statutes for that. No, Your Honor. But it sounds to me—I'll let you finish, but let me—are you saying if they look at this and they say this is not final, then they directly go on and say, well, this is not final, so we're going to look at whether this establishes an earlier effective date? They—well— Or do you have to—because it's not final, the CUE challenge is dismissed, and you're free to re-raise another challenge to say that the earlier effective date is wrong because there's an unadjudicated claim out there. So— Does it happen in the same proceeding where all you've done is challenge CUE, or are there two separate— It depends on where it happens. Obviously, at the board, if the board finds that there was a pending claim, it would order the regional office to issue a decision that can then be appealed. If the regional office is looking at it and they discover a pending claim, they would just adjudicate that pending claim because that claim had already been filed. So it sounds to me you're actually saying what you said you weren't saying, which is every CUE challenge contains an implicit challenge that the decision being attacked is non-final and should be looked at again to determine an effective date. Not an implicit challenge, Your Honor, but it—and I understand the semantics, but I do think it's an important distinction is that it's not a challenge to the finality. CUE claims have to be raised with specificity. They do. And what you're now saying is even though they're raised with specificity, there's this inherent, implicit, unsaid challenge that's somehow piggybacking on a CUE claim even though it's not anywhere in the CUE claim, nor could it have been raised with the CUE claim. But it's not unsaid, Your Honor. The regulation very clearly says— Yes, it is. If you want to challenge a decision as not being final and providing a basis for an earlier effective date, how do you do it? It's not with the CUE claim, right? There's—well, there's—you typically would not, Your Honor. But what this case does is it recognizes that the regulation requires, and all the case law interpreting this all the way up to the Supreme Court, that a CUE only lies in a final decision. And so if the decision is not final, then there's no legal authority to address, to apply this statute, to apply this regulation, and that's why we think it's jurisdictional. I mean, you'd be much—on much firmer grounds if you had just answered, sure, if it's non-final, then the CUE claim gets dismissed, and then the veteran can choose to do what—with that he or she wants. But if you're saying that then the board or the RO has the obligation as part of that CUE action to create a new action— I see your point, Your Honor. Yes. As part of the CUE action, there's no further obligation. Once it's been dismissed— I think you're still basically telling me practically this is what's going to happen, even if you put it in different words. Well, no, but— Let me go back to Judge Klemner's question. If we read the court's decision as refusing to address this finality argument, and it pretty clearly says it does, how do we have jurisdiction? We only have jurisdiction over legal issues that were raised or relied on by the Veterans Court. So the legal— And if they explicitly said they weren't reaching it, then they weren't relying on it. So the legal rule, Your Honor, is that they don't have to do it. And so because it's a jurisdictional question, it can be raised at any time, so it's prompted by the court, by any party, including even at this court or the Supreme Court. And so if it's a jurisdictional mandate, then it can be raised at any time, and the court has to address it and has to establish whether or not there was jurisdiction in the very first place. And that's—you know, we cited this court's case law. So in every case going forward from now through the end of time, even if it hasn't been addressed at the RO, the board, or the Veterans Court, you can come in here and say, oh, this really is an acute claim because that's not a final decision, and since it's jurisdictional, we can raise it to you, the second appellate court, for the first time. Yes, Your Honor, unfortunately. But again, that's the way that the regulation is written. That's what the Secretary wanted when he wrote this regulation. And remember, this regulation precedes everything. It's very clear that it requires a final and binding decision. I see that I'm into my rebuttal time, so if there are no other questions, I'll reserve the remainder of it. Okay, thank you. Good morning. May it please the Court. I'll jump right into your question, Judge Clevenger. I'm happy to sign up to your view of things. I think that the way we framed our brief was in recognition of cases like Bozeman, where there was the Veterans Court invoking issue exhaustion, and the government came and argued to this court that there was no jurisdiction because that issue wasn't decided. And this court decided that, in fact, what the Veterans Court had done was misinterpret issue exhaustion and the test because the issue in that case, it had determined, was a substantive issue that should not have been found to have not been exhausted. And so I think we were addressing the issue on the merits to make clear that there's no merit to it before we got to the question of whether or not issue exhaustion was properly invoked. But we fully agree, this court should dismiss this appeal because this court does not have jurisdiction to review the Veterans Court's application of issue exhaustion. I don't think that Mr. Young in his brief identifies any misstatement of the standard for issue exhaustion. He simply disagrees with the way it was applied here. What is it that you are now taking the position that there was no decision on the legal question that he's presenting to us? Sure, yes, Your Honor. And because there was no legal decision, there was no, that they relied on, you know, below, then we don't have a jurisdiction to reach that. Now my understanding was that if we reached that conclusion, Young was saying the case is over, that that wipes out his challenge to the holding that he had failed to exhaust. Agree, Your Honor. So that takes care of it. Yes, and I think we wanted to be extra clear to make sure that to the extent this court were to somehow decide that it was going to reach the question of whether or not any statute requires the VA or the board to undertake an audit for potential non-finality, that there was no statutory or regulatory basis for that. Because I think as Judge Yu's question recognized, that would really sort of destroy the unique nature of Q. It's supposed to be a specific and rare kind of error that's played with specificity. If there was this freestanding challenge to finality implicit. What do we do with Andrews? Doesn't Andrews say that in a counsel Q case, the failure to raise at the BVA the point you're raising at the CBC is fatal? Yes, Your Honor. Agreed, and we cited that in our brief for that very proposition. I don't believe you cited it in your brief for that proposition. That would surprise me. In fact, your brief didn't cite Andrews. No, you're right, Your Honor. And that is an oversight bias, but I agree. Doesn't that end the argument? Yes. I mean, I think in recognition of that holding. Why isn't Judge Toth citing that? I agree. He certainly should have. I think what he was doing was he was going to the next step, which is even if we were somehow required to give a liberal construction to a Q motion filed by counsel, which you're right, Andrews says is not, it wouldn't reach as far as Mr. Young is asking it to reach, because what he's really doing is stepping on Robinson, which says that even where a liberal construction is required. Robinson confirms Andrews. Right, but the VA is not required to conceive of all possible bases for the veteran's claim. And so I think he was just simply going to that next step. But I agree with you, Your Honor. That he could have cited to Andrews, and that would have put an end to this question. If this was somehow a jurisdictional argument, then it would be appropriate to raise it at the veterans court level, wouldn't it? In theory, yes. But I think what Mr. Young is doing is a bit of sleight of hand. His opening sentence to you said that the veterans court had excused the board from determining whether or not the decision was final. That is not at all what the veterans court said. The board here at Appendix 56 and 57 found that the 1972 and 76 decisions were final, and therefore it could go on to adjudicate Q. What he's asking for is that if it were truly jurisdictional, then the veterans court wouldn't go any further. It would order the case dismissed. If the question of finality was jurisdictional? Yeah. It would just dismiss the Q case. It wouldn't go on, and it wouldn't remand, and it wouldn't order the RO or the board to further look at this. It would dismiss. That's what happens when cases are jurisdictional. The action, the court, the board, the RO, none of them had jurisdiction. It wipes it out. It doesn't create a new obligation to look at that decision.  I agree, Your Honor. But to reach that conclusion, the veterans court would have had to decide that, in fact, there was a rating decision that was not final. I think that's right. It could not just accept the allegation of non-finality. It would have had to go further. And I guess then you would – And so then I guess Mr. Doak's argument is that this whole question of finality is something of a jurisdictional predicate to any and every Q claim. Well, he is, but that isn't really the issue because the court – the board found these decisions were final. There was no suggestion of non-finality. There was no suggestion that he hadn't received notice. There was no suggestion of any of the other hundred ways in which someone – I wouldn't say there was no suggestion that he hadn't received notice. I thought he said as to one, the 72, one of the RO actions, he said he didn't get the notice. But then he also said that that decision became final. And he also was bringing a Q claim, which is predicated on the decision being final. So it's not as if it's sort of a closely related legal theory that could get him to where he wanted to go. It was completely opposite to what he was telling the VA. He was saying to the VA, I have several final decisions.  So I don't understand the theory. I mean, as the Veterans Court noted, he could have made arguments in the alternative. He did not. So as the Veterans Court said, one stray comment that he didn't receive notice isn't sufficient to raise from an attorney. Well, the alternative argument would have been he said this is final, but I may be wrong. It may not be final because there's one at least incidence of lack of notice. He could have done that. But I do think it's important to note that like with procedural issues, as this Court discussed in Scott, it may have been a strategic decision not to press non-finality. And I actually think stepping outside the record a little bit, it would have been here because he brought the same claim for the same disability many times. And in the 88 denial, he received that notice because he filed a notice of disagreement. Are you saying that if he had argued that this earlier one was non-final because of the lack of notice, that the finality would have been subsumed in later decisions? Right. And so he couldn't have challenged it as a non-final decision because the same arguments had already been adjudicated. So his only real procedural path was Q. Right. And that's why I think the 2013 Q allegation did not make a non-finality argument. And I also think it explains why before the Veterans Court, Mr. Young went from asking for the Veterans Court to remand the finality questions in his opening brief to, in his reply, asking the Veterans Court to simply order the board to give him a 1972 effective date because he recognized that the later decisions extinguished any claim to the extent it had been unadjudicated and pending. Unless the Court has any further questions, we would ask the Court to dismiss or affirm the alternative. Thank you, Your Honors. Thank you. Thank you, Your Honor. So just to clarify with our response on what the actions are in a Q determination. The board determines it's final. They did that in this case. That was challenged at the Veterans Court. Once that's done, the Q action ceases and it's over. Either at that point the normal rules apply and either the claimant can then request a decision or the VA, under its statutory obligations to issue notice under 5104, would then complete the claim. If there's any duty to assist, that still applies. Any additional laws. And then they would issue notice with appeal rights and give the Veteran the opportunity to file a direct appeal. So the Q itself stops once a decision is determined to not be final. Now when the board normally in the normal course. Why, if you're bringing a Q claim, would you suggest that it's non-final? It almost smacks to me of bad faith when it's a lawyer doing it. Because a lawyer, when he or she files a Q claim, I'm not accusing you personally. I'm just saying hypothetically. If you are a lawyer and you bring in a Q challenge, you understand that that has to be attacking a final decision. And so if you're doing that and not specifically raising an alternative argument, which maybe you can do, although there's probably some procedural hurdles of saying, but if it's not, then when you bring only a Q claim, why can't the VA take it based upon good faith that you're challenging a final decision? Well, in part because, Your Honor, no party can waive jurisdiction. Let's set that aside. I understand. No, no, no, no, no. Can you just stop a minute? I don't want to talk about jurisdiction because I don't think you're right about it. Being a jurisdictional in the sense that courts have Article III jurisdiction, I think it's about the authority of the agency. I think that's something far different than the way you're using jurisdiction. But why can't the RO or the board rely on the representation of an attorney for a veteran when he or she files a Q claim that they're attacking a final decision? So a couple of reasons, Your Honor. One, the law changes through the lives of these, and sometimes new case law comes out, which would directly affect whether notice was provided. And as you know, we've- Yes, but if that's the case, you don't file a Q challenge. You file some kind of other challenge that says there's a pending unadjudicated claim because I didn't get notice, which affects my effectiveness. And with respect to an attorney, Your Honor, certainly when it gets to court often- This is attorneys, right? We're not talking about pros and stuff here and reading things- And that was my next comment, Your Honor. I understand there was a switch in attorneys, and maybe you would have done things differently than your predecessor, but you're bound by what he or she did. Right, Your Honor. And that was my next point, is that when this rule- And one of the reasons we brought this case was to- mostly to protect the pro se, non-attorney-represented veterans. When they proceed thinking that this is a CUE- Well, you know we're not going to issue an advisory- I understand that, Your Honor. It doesn't matter. But if the ruling applies here, then certainly it would apply there. But, again, we do think that it does apply across the board and that without a final decision, there's no statutory authority. Andrews is wrong? No, Your Honor. Andrews is absolutely correct, but the reason Andrews doesn't apply is because before you get to the pleadings, there has to be a final decision. And so the pleadings have nothing to do- I thought Andrews just said in a CUE case like this where somebody's trying to- didn't make an argument in front of the BVA, wants to make it in front of the CAVC, Andrews said it's fatal. You didn't raise it before- In the CUE itself, Your Honor. Not in the predicate finding of whether there's a final decision such that the CUE statute applies. And so we don't even get to CUE if there's no final decision, and so Andrews is- So you're trying to distinguish Andrews? Absolutely, Your Honor. And so Andrews applies when looking at whether there is- It's late, isn't it? Oral argument? Your Honor, I think our reply brief laid this out that- In all of this, you could see all of this coming, right? Your Honor, I would just- Our briefing rests on this precise point that you can't get to CUE without a final decision. The only option, and if a final decision doesn't exist, is to dismiss the CUE. And so whatever Andrews requires in a motion is irrelevant to whether there is CUE in the first place. Thank you very much, Mr. DeLancas. Thank you, Your Honor. The case is submitted.